KOZLOWSKI v. CHRYSLER CORPORATION AND
SECOND INJURY FUND

1. WORKMEN'S COMPENSATION—SPECIFIC LOSS BENEFITS—WAGES.
    A claimant is entitled to benefit payments for his loss of one
    of the specific organs enumerated in the workmen's compensa-
    tion act for the period provided in the statute regardless of
    the wages, if any, he receives after the injury.

2. WORKMEN'S COMPENSATION—SPECIFIC LOSS BENEFITS—MEASURE
   OF LOSS.
    The general test for determining a claimant's eligibility for
    total and permanent disability benefits for specific loss under
    the workmen's compensation act is not applicable where the
    statute itself provides a particular test for determining
    permanent and total disability.

3. WORKMEN'S COMPENSATION—LEGS—SPECIFIC LOSS BENEFITS.
    A claimant is entitled to permanent and total disability bene-
    fits under the workmen's compensation act where he has
    suffered the loss of the industrial use of both legs. (MCLA
    § 412.9; § 412.10(6)(7)).

Appeal from the Workmen's Compensation Ap-
peal Board. Submitted Division 1 April 17, 1970,
at Detroit. (Docket No. 7,409.) Decided July 28,
1970. Leave to appeal denied November 24, 1970.
384 Mich 782.

The Workmen's Compensation Appeal Board re-
versed a referee's award of benefits to plaintiff Amy

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation §§ 287, 300.
[2] 58 Am Jur, Workmen's Compensation §§ 282, 283.
[3] 58 Am Jur, Workmen's Compensation §§ 283, 287, 288.

Kozlowski on her claim against Chrysler Corporation and the Second Injury Fund for total and permanent disability. Plaintiff appeals. Reversed and remanded.

*Kelman, Loria, Downing & Schneider (John W. Simpson, Jr.*, of counsel), for plaintiff.

*Lacey & Jones (E. R. Whinham, Jr.*, of counsel), for defendant Chrysler Corporation.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Roger G. Will*, Assistant Attorney General, for the Second Injury Fund.

Before: Lesinski, C. J., and Quinn and O'Hara,[*] JJ.

O'Hara, J. This is an appeal from an order of the Workmen's Compensation Appeal Board.

Plaintiff filed an application pursuant to § 10(b)(7) of Part II of the Workmen's Compensation Act[1] for specific loss benefits alleging total and permanent disability by reason of loss of the industrial use of both legs. The referee awarded benefits; the appeal board reversed in a split decision.

Plaintiff states the issue thus:

"Does § 10b of Part II of the Workmen's Compensation Act, which defines total and permanent dis-

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA § 412.10 (Stat Ann 1968 Rev § 17.160). For the current statute, see § 361(2)(g) of PA 1969, No 317 (MCLA § 418.361 [Stat Ann 1970 Cum Supp § 17.237 (361)]).

ability as 'loss of industrial use of both legs', mean inability to use one's legs in any activity, or does it mean inability to use one's legs in gainful industrial employment."

The defendant poses the same question in somewhat different language:

"Is the standard of measuring loss of use of an extremity used by the Workmen's Compensation Appeal Board consistent with the language of Section 10 of Part II of the Workmen's Compensation Act and prior decisions of the Supreme Court."

Manifestly both stated questions are clear questions of law and thus subject to judicial review. Appellee does include additional questions concerning the evidence adduced in support of findings of fact which will be discussed separately later.

In relevant part the involved statute provides specific loss benefits for total and permanent disability. Specific loss payments in Michigan are basically different from the other benefits provided for in the act. The difference has been judicially recognized:

"Michigan has 2 types of workmen's compensation benefits, wage loss disability payments and specific or schedule loss payments. The first type is dependent upon proof of a wage loss resulting from an industrial injury. It is a differential payment computed on what wage the injured workman is able to earn after his injury and the wage he was earning at the time he was injured. If there is no difference he receives no benefits. The second type is a specific loss benefit paid under a schedule of losses applicable to certain designated organs or anatomical members. To this benefit the injured workman is entitled during the period provided in the schedule, irrespective of any wages he receives whether greater or less than those he received at

the time of his injury." (*Hutsko* v. *Chrysler Corporation* (1968), 381 Mich 99, 102.)

There is an additional refinement in specific loss benefits in that certain subsections of the governing statute contain the definition of what the "loss" consists. Thus, in the case of an eye, the loss of 80% vision constitutes the loss of an eye. The proviso under which appellant seeks benefits within this class, subsection (7) when read together with section 9, (as it must be), provides for total permanent disability benefits when the applicant has suffered the loss of "industrial use of both legs." Plaintiff claims in this case that while she has some use of her legs, she has no industrial use thereof.

The majority of the appeal board applied to the testimony concerning plaintiff's degree of disability the test set out in *Hutsko* v. *Chrysler Corporation, supra.* We think the majority did so incorrectly. *Hutsko* contains restrictive language which limits its precedential scope. There was no fact issue in *Hutsko.* The Supreme Court noted with care at the outset what the precise issue was:

"Where a claimant has lost the industrial use of his hand *in his particular skill but retains a measure of general industrial use thereof,* has he sustained the loss of his hand within the meaning of the specific loss schedule of the workmen's compensation law?" (*Hutsko, supra,* 101) (Emphasis supplied.)

It is in the context of this important limitation that *Hutsko* must be applied. The case dealt with the claim of a "skilled worker" who was at the time of the decision still receiving wage loss disability payments during periods when he was unemployed. His claim was for specific loss benefits even while he *was* employed and receiving wages equal to those

he received when working at his skilled trade before his injury.

The *Hutsko* case did not address itself to the language of subsection (7) which is involved here, *viz.*: "the loss of the industrial use of both legs". Mr. Hutsko's injury was to one hand. He lost his little finger and had restricted use of his middle and ring fingers and a consequential deformity of his index finger. His thumb and the palm of his hand were normal. The court pointed out:

"All of the medical testimony is in substantial agreement that he lost the industrial use of the hand *in his skill* and retains some *general industrial use.*" (p 101; emphasis supplied.)

Even if the testimony adduced in *Hutsko* had shown the total loss of industrial use of his hand "tantamount to destruction or amputation", his loss would not have come within the terms of subsection (7). *Hutsko* decided what was involved in that case. It did not, we think, decide what is involved here.

We think it should be noted that the Supreme Court recognized in *Hutsko* what we recognized here, that where the involved subsection contains a particular test, the general test of *Hutsko* does not obtain. As the court noted:

"We hardly need add that where the specific loss schedule makes an exception as in the case of eye, the percentage of loss legislatively specified obtains." (*Hutsko, supra,* 103.)

We hold the same exception applies to subsection (10)[b](7).

The testimony in this case concerning Mrs. Kozlowski's disability is in sharp conflict. Dr. Lipton, a specialist in the treatment of trauma, testified unequivocally:

"In view of her symptoms of pain in both lower limbs with any standing or walking, this woman must be considered to have lost the industrial use of both lower limbs."

Dr. Forrer, a psychiatrist, testified:

"In my opinion her reason for not being employed has a very large psychological component."

The substance of his testimony was that plaintiff's disability was attributable to a defense mechanism, directed toward her husband's accusations of infidelity while she was away from home at work. He testified she "took an oath" not to work again and was respecting it.

There were comparably sharp conflicts in the testimony of the other medical witnesses.

With respect to findings of fact in cases such as this, there is no area of appellate review in our state more restricted. The statute is clear:

"The findings of fact made by the compensation commission acting within its powers, shall, in the absence of fraud, be conclusive  *  *  *  ." MCLA § 413.12 (Stat Ann 1968 Rev § 17.186).[2]

The words of the statute have been incorporated in judicial decisions times without number.

While we must abide by the findings of fact of the commission (Appeal Board), to do so we must at least know what they are in order to properly apply the controlling law to them.

In this case there were three opinions by the board. The two which constituted the majority we believe misapplied the rule of law established by *Hutsko*. Since these opinions carry the signature of four

---

[2] MCLA § 413.12 (Stat Ann 1968 Rev § 17.186). This section was repealed and superseded by § 861 of PA 1969, No 317 (MCLA § 418.861 [Stat Ann 1970 Cum Supp § 17.237 (861)]), which reads, in part, "[t]he findings of fact made by *the board* [appeal board] acting within its powers, in the absence of fraud, shall be conclusive." (Emphasis supplied.)

members of the board, there are no findings of fact by a majority which applied the law properly.

Of necessity then, for the error of law, we set aside the holding for further consideration of the record already made. The reconsideration should contain specific findings of fact on the question presented by the self-contained test in subsection (7). That question is whether plaintiff lost the "industrial use" of both legs, as the quoted term is used in the statute, and not as it was used in the *Hutsko* opinion where subsection (7), and its own particular test, was not involved.

If total and permanent disability is found on the basis of the test in subsection (7), there should be a further finding of fact as to when it occurred, particularly in relation to the date of the amendment adding this loss to the specific loss schedule.

We reverse and remand for further proceedings as above indicated. No costs, neither party having prevailed in full.

All concurred.